IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Chuang Chol Dong, | ) | No. CV-09-1594-PHX-JWS (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Eric H. Holder, Jr., et al., | ) ) ) | |
| Respondents. | ) ) | |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking immediate release from custody and a declaration that his detention is unlawful.  (Doc. 1)  Petitioner moved to consolidate this proceeding with twelve other actions wherein petitioners request immediate release from custody and a declaration that their detention is unlawful. After several amended motions and voluminous briefing, in accordance with LRCiv 42.1, Magistrate Judge David K. Duncan denied the motion to consolidate on September 2, 2010.[1]  (Doc. 39)  Accordingly, this

---

[1]  The Order denying the motion to consolidate stated: "The Court agrees with the government that neither consolidation of the cases nor a stay and transfer to a single judge is appropriate, and will deny the motions to consolidate . . . The government is correct that although the thirteen petitioners initially filed habeas petitions seeking immediate release from custody, alleging that their continued detention was unlawful, in all thirteen cases their current status differs from that described in their original petitions. Specifically, either the authority under which the petitioners are being detained by the government has changed or their custody status has changed." (Doc. 39 at 4-5)

matter is ripe for review.

**I. Background**

Petitioner is a native and citizen of Sudan who was admitted into the United States as a refugee on August 6, 2002. (Doc. 15, Exh. 1) Several years later, on November 19, 2008, Petitioner was convicted in the Superior Court of Arizona, Maricopa County, of theft and was placed on probation for two years. (Doc. 15, Exh. 2)

On March 19, 2009, the Department of Homeland Security ("DHS") placed Petitioner in removal proceedings by issuing a notice to appear ("NTA"). DHS alleged that Petitioner was subject to removal under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as amended, as an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. (Doc. 15, Exh. 3) DHS also charged Petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), INA § 212(a)(7)(A)(i)(I) as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 211(a) of the Act. (Doc. 15, Exh. 3)

On May 6, 2009, Petitioner appeared before an immigration judge ("IJ") for a custody redetermination hearing. The court determined that it did not have jurisdiction to set bond because Petitioner was an arriving alien and because his theft conviction is a crime involving moral turpitude. (Doc. 15, Exh. 4) On May 7, 2009, the Government moved to dismiss the NTA without prejudice because Petitioner is a refugee who has not applied to adjust status to that of a lawful permanent resident. (Doc. 15, Exh. 5) On May

11, 2009, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals ("BIA") from the IJ's order denying bond. (Doc. 15, Exh. 7) On July 16, 2009, the BIA dismissed Petitioner's appeal of the IJ's decision finding that the IJ lacked jurisdiction to grant him bond or redetermine his custody status pursuant to 8 C.F.R. § 1236.1(d) because Petitioner's removal proceedings had been terminated. (Doc. 15, Exh. 8)

On May 15, 2009, Petitioner submitted an I-485 application to adjust status and request waiver for inadmissibility. (Doc. 15, Exh. 7) Petitioner did not have the funds to pay for the required medical examination for his adjustment application. The assigned Deportation Officer made efforts to find a family member or private organization to pay for the examination which delayed the adjudication of the adjustment application.

While his adjustment application was pending, on August 3, 2009, Petitioner filed the pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. When Petitioner filed his Petition, he was in DHS custody in Florence, Arizona pending the adjudication of his application to adjust status. His custody was pursuant to 8 U.S.C. § 1159 which provides that if an alien who was admitted conditionally as a refugee fails to adjust his status to that of a lawful permanent resident within one year, he must be returned to the government's custody for inspection and examination regarding admission. 8 U.S.C. § 1159. Petitioner's Petition asserts three grounds for relief: (1) his ongoing detention, pursuant to 8 U.S.C. § 1159, is not authorized by the Immigration and Nationality Act; (2) his continued detention pursuant to 8 U.S.C. § 1159 violates the Fifth Amendment's substantive Due Process Clause because his continued detention is not reasonably related to a legitimate governmental objective, is arbitrary, and lacks adequate procedural safeguards; and (3) his continued detention pursuant to 8 U.S.C. § 1159 violates his right to procedural due process under the Fifth Amendment because he has been deprived of the adequate and meaningful procedures guaranteed by the Due Process Clause. (Doc. 1 at 7-9) Petitioner seeks immediate release from custody and a

declaration that his detention by Respondents is contrary to law and unconstitutional. (Doc. 1 at 9)

After Petitioner commenced this § 2241 proceeding, on August 18, 2009, the United States Citizenship and Immigration Services ("CIS") agreed to begin the adjudication process without the medical examination.  (Doc. 15, Exh. 10)  On October 14, 2009, the DHS placed Petitioner in removal proceedings by issuing, serving, and filing a NTA with the immigration court.  (Doc. 24, Exh. 2)   The NTA refers to Petitioner's 2008 felony conviction for theft.  (Doc. 24, Exh. 2; Doc. 15, Exh. 2)  On October 22, 2009, Petitioner was released on his own recognizance.  (Doc. 24, Exh. 1) There are no conditions, aside from Petitioner appearing at required removal proceedings or interviews with DHS, governing his release.  (Doc. 24, Exh. 1)  Respondents argue that, because Petitioner is no longer in custody and has been placed in removal proceedings, the Court can no longer grant the relief Petitioner seeks and the Petition should be denied as moot.  Petitioner opposes this assertion.

## II.  Analysis

"Historically, the function of the writ [of habeas corpus] is to secure immediate release from illegal physical custody."  *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484-85 (1973), *overruled by Stone v. Powell*, 428 U.S. 465 (1976)).   Under certain circumstances, however a petitioner who has been released may meet the "case or controversy" requirement by establishing that an exception to mootness applies.  *Clark v. Martinez*, 543 U.S. 371, 376 n. 3 (2005).  In this case, Petitioner has been released, but argues he is at risk of future detention.  Petitioner asserts that his Petition is not moot because the "capable of repetition" and "voluntary cessation" exceptions apply.

### A.  Capable of Repetition Exception

The case or controversy provision of Article III, § 2 of the Constitution "subsists through all stages of federal judicial proceedings, trial and appellate . . .The parties must

1    continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523

2    U.S. 1, 7  (1998) (quoting *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477-478

3    (1990)). This means that, throughout the litigation, Petitioner "must have suffered, or be

4    threatened with, an actual injury traceable to the [Respondent] and likely to be redressed

5    by a favorable judicial decision." *Id*. (quoting *Lewis*, 494 U.S. at 477). Whether a case

6    does not meet the case or controversy requirements of Article III, and is thus moot, is a

7    question of federal law upon which the federal court "must pronounce final judgment."

8    *Liner v. Jafco*, 375 U.S. 301, 304 (1964) (citing *Love v. Griffith*, 266 U.S. 32 (1924)).

9           A claim which is rendered moot may, nonetheless, survive dismissal if it is

10   "capable of repetition yet evading review." *Spencer*, 523 U.S. at 17.  Such a claim,

11   however, is only recognized in "exceptional situations." *City of Los Angeles v. Lyons*, 461

12   U.S. 95, 109 (1983).  "'[I]n the absence of a class action,'" the capable of repetition

13   exception is limited to the situation where the following two criteria are present: "'(1) the

14   challenged action was in its duration too short to be fully litigated prior to its cessation or

15   expiration, and (2) there was a reasonable expectation that the same complaining party

16   would be subjected to the same action again.'" *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)

17   (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). "Reasonable expectation"

18   does not refer to a "mere physical or theoretical possibility," but to a "demonstrated

19   probability." *Murphy*, 455 U.S. at 482.

20          Under § 1159(a), a refugee who has been physically present in the United States

21   for at least one year and has not acquired permanent resident status must "return or be

22   returned to the custody of the Department of Homeland Security for inspection and

23   examination for admission to the United States as an immigrant." *Id*.  Petitioner argues

24   that Respondents have a longstanding policy of detaining refugees under 8 U.S.C. § 1159,

25   but because the average length of detention under § 1159 is less than the amount of time

26   required to adjudicate a habeas petition, he and other refugees will be deprived of any

27   opportunity to seek judicial review of their detention.  Petitioner argues that "where

28

constitutional rights are allegedly at issue, a case is not moot when a procedure cuts off the possibility of appeal by the shortness of the sentence being appealed." (Doc. 30 at 3) (citing *U.S. v. Roblero-Solis*, 588 F.3d 692, 698 (9th Cir. 2009)).  Petitioner also argues that his case is not moot because the continuing threat of detention under § 1159 is a collateral consequence.  In *Roblero-Solis*, the Ninth Circuit considered whether an ongoing procedure adopted by the District of Arizona, Tucson, for taking pleas *en masse* of defendants charged with illegal entry complied with Rule 11 of the Federal Rules of Criminal Procedure. 588 F.3d at 693-98.  Before conducting the Rule 11 analysis, the court *sua sponte* raised the issue of whether the specific appeals of the defendants in question were moot because each defendant had served his sentence and had been deported. *Id*.  In finding that the defendants' challenge to the district court's procedure was not moot, the court explained that defendants were challenging an ongoing policy involving a procedure that is of so short duration that it evades review.  *Id*.  The court also found that the defendants faced collateral consequences such as longer periods during which they would be ineligible to enter the United States legally.  *Id*.

Unlike *Roblero-Solis*, although the challenged policy in this case is of short duration, the Government has made assurances that the allegedly unconstitutional policies have been discontinued.  Specifically, On November 10, 2009, Katrina S. Kane, Field Office Director of the Phoenix Field Office, Office of Detention and Removal Operations, issued a guidance memorandum clarifying Field Office policy regarding custody decisions of unadjusted refugees.  (Doc. 24, Exh. 3)  The memorandum explains that decisions concerning detention must be made in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), which requires that, "in the absence of an emergency or other extraordinary circumstances, a determination must be made within 48 hours whether or not to release such aliens (and if so, under what conditions), and whether to place them in removal proceedings." (*Id*.)  Additionally, after briefing closed in this matter, on May 10, 2010, James Chaparro, ICE's Executive Director of Enforcement and Removal

Operations, issued a guidance memorandum to all ICE Field Offices throughout the United States. *Gelee v. Kane*, No. CV-10-388-PHX-PGR (MHB), 2010 WL 5535059, * 2 n. 2 (D.Ariz., Dec. 13, 2010). The memorandum clarifies that an unadjusted refugee's failure to adjust status alone is not a sufficient basis for placing him in removal proceedings or a proper ground for detention. *Id*. The May 10, 2010 memorandum further states that unadjusted aliens must be detained in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), and that a determination must be made within 48 hours whether to release an alien or place him in removal proceedings if a violation of the INA can be established that is unrelated to the alien's failure to adjust. *Id*. The 2009 and 2010 memoranda establishing the current policy regarding the detention of unadjusted refugees undermine Petitioner's speculation about future detention under § 1159.

Further, contrary to *Roblero-Solis*, in his habeas petition, Petitioner sought individual relief in the form of release from alleged unauthorized, indefinite detention. Although he claims that the average length of detention under § 1159 is less than the amount of time required to adjudicate a habeas petition, he has not described any adverse consequences stemming from the basis for his previous detention. And, the Ninth Circuit in *Roblero-Solis* did not hold that an attenuated and speculative possibility of future detention is sufficient to overcome mootness.

Petitioner also relies on *U.S. v. Brandau*, 578 F.3d 1064 (9th Cir. 2009). The Ninth Circuit in *Brandau* remanded the defendants' challenge to a policy of full shackling at initial court appearances adopted by the Eastern District of California in order to determine mootness by conducting an evidentiary hearing on the nature of the current shackling policy in the various district courts in the Eastern District. *Brandau*, 578 F.3d at 1065-68. Although, after the defendants made their initial appearances, the shackling policy had been changed in writing to provide for individualized determinations regarding the necessity of full shackling, the Court of Appeals could not determine whether, in practice, there was an "ongoing policy" of full shackling. *Id*. The Ninth Circuit noted that

there was information "that strongly suggest[ed]" that the policy at issue was ongoing, including statements made by government counsel confirming the status of the policy." *Brandau*, 578 F.3d at 1068.

Unlike *Brandau*, the Government's 2010 written guidance memoranda governing the detention of unadjusted refugees demonstrates the absence of an ongoing policy of indefinitely detaining unadjusted refugees pursuant to § 1159, and Petitioner fails to present any evidence to indicate otherwise.  Petitioner relies on: (1) a July 1, 2009 declaration of a former Arizona immigration attorney who describes her first encounter with unadjusted refugees in 2002; (2) a February 10, 2008 article printed in the Arizona Daily Star on the practice of detaining unadjusted refugees; (3) a June 18, 2009 letter to Janet Napolitano regarding the policy of detaining refugees; and (4) a December 2009 report from Human Rights Watch on the detention of unadjusted refugees. (Doc. 30 at 5, citing exhibits to Doc. 3)  Any declaration, article, letter, or report describing events which pre-date the guidance memoranda issued by DHS in 2009 and 2010 fails to support a current ongoing policy of indefinitely detaining unadjusted refugees under § 1159. Petitioner speculates that he will be detained under § 1159 in the future. Such speculation does not satisfy Petitioner's burden.  Because Petitioner cannot show that he will again be detained under 8 U.S.C. § 1159, and there is no evidence of any "ongoing policy" of alleged unlawful detention, Petitioner fails to demonstrate that his claims fall under the "capable of repetition yet evading review" exception to mootness, or that the threat of detention under § 1159 is a collateral consequence.

### B. Voluntary Cessation

Under the voluntary cessation exception "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,'" unless the party alleging mootness shows that the "allegedly wrongful behavior could not be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc. (TOC)*, 528 U.S. 167, 189 (2000).  In such cases, the

defendant bears a heavy burden of demonstrating that the conduct at issue cannot reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 189-90. Defendants have been found to satisfy their burden by, for example, submitting an affidavit disavowing any intent to ever repeat the challenged conduct. *See, e.g., Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir.1991) (declaration of director of Los Angeles district office of INS swearing to statement that habeas petitioner would continue to be paroled and would not be re-detained absent his reinvolvement with criminal justice system); *see also Lane v. Williams*, 455 U.S. 624, 629 n. 8 (1982) (habeas petition found moot upon State's representation in its brief that petitioner had been "totally discharged," and upon Court's "understanding that the State may not subject [petitioner] to any further detention or restraint"). The Ninth Circuit has recently reiterated that "where there is 'no reasonable . . . expectation that the alleged violation will recur,' and where 'interim relief or events have completely eradicated the effects of the alleged violation,' the case is moot." *Am. Cargo Transp. Inc. v. U.S.*, 625 F.3d 1176 (9th Cir. 2010) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Petitioner argues that, even if the Court finds that Respondents have discontinued the policy of detaining refugees under § 1159, the "voluntary cessation" exception to mootness applies. Petitioner asserts that the mere cessation of illegal activity in response to pending litigation does not moot a case unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be expected to recur.

As previously stated, on November 10, 2009, Katrina S. Kane, Field Office Director of the Phoenix Field Office, Office of Detention and Removal Operations, issued a guidance memorandum clarifying Field Office policy regarding custody decisions of unadjusted refugees. (Doc. 24, Exh.3) The memorandum explains that decisions concerning detention must be made in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), which require that, "in the absence of an emergency or other extraordinary circumstances, a determination must be made within 48 hours whether or not to release

such aliens (and if so, under what conditions), and whether to place them in removal proceedings." (*Id.*)  Additionally, on May 10, 2010, James Chaparro, ICE's Executive Director of Enforcement and Removal Operations, issued a guidance memorandum to all ICE Field Offices throughout the United States.  *Gelee,* 2010 WL 5535059, at * 2 n. 2. The memorandum clarified that an unadjusted refugee's failure to adjust status alone is not a sufficient ground to place him in removal proceedings or a proper ground for detention.  (*Id.*)

Petitioner, referring to the 2009 memorandum, argues that it "falls far short" of meeting Respondents' burden to persuade the Court that the challenged conduct cannot reasonably be expected to recur because the memorandum is unenforceable insofar as it violates current Board of Immigration Appeals ("BIA") and circuit case law and because Respondents have failed to comply with their own memorandum.  (Doc. 30 at 8)

As to Petitioner's contention that the "voluntary cessation" exception to mootness applies to this case, the Court finds that Respondents have met their burden and demonstrated that the allegedly wrongful behavior could not reasonably be expected to recur.  The guidance memoranda issued by DHS articulating the nationwide policy that unadjusted refugees will not be detained merely for failure to adjust status supports Respondent's assertion that the allegedly wrongful conduct cannot reasonably be expected to recur. *See America Cargo Transport, Inc. v. U.S.*, 625 F.3d 1176 (9th Cir. 2010) (finding voluntary cessation argument unpersuasive where government had changed its policy and noted that the policy was in line with plaintiff's position).

Citing to *Matter of Garcia-Alzugaray*, 19 I. & N. Dec. 407 (BIA 1986) and *Romanishyn v. Attorney Gen. of the United States*, 455 F.3d 175 (3d Cir. 2006), Petitioner argues that, even if Respondents have discontinued the policy of detaining refugees pursuant to § 1159, that is not enough to render the Petition moot because the memoranda are unenforceable insofar as they "violate[ ] current BIA and circuit case law by placing refugees in removal proceedings prior to a decision by an immigration official on

inadmissibility." (Doc. 30 at 8)  The Court finds Petitioner's argument, and cases in support thereof, misplaced.

To the extent Petitioner argues that the memoranda are unenforceable because they place other refugees in removal proceedings prior to a decision by an immigration official on inadmissibility, his claim fails. As set forth previously, on May 10, 2010, James Chaparro, ICE's Executive Director of Enforcement and Removal Operations, issued a guidance memorandum to all ICE Field Offices throughout the United States.  In clarifying "when and under what circumstances [ICE] Field Offices may detain refugees who have failed to adjust to lawful permanent resident (LPR) status," Chaparro specifically stated, *inter alia*, that

> Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the DRO Field Office first must finalize its determination whether to place the individual in removal proceedings under INA § 240 and, if so, whether to continue detention. A refugee may not be placed in removal proceedings based on a failure to adjust status or to apply for adjustment of status because an alien's failure to adjust status or apply for adjustment under INA § 209(a) is not a ground for removability. Therefore, the only way DRO may place an unadjusted refugee in [removal] proceedings is if a violation of the INA can be established that is unrelated to the alien's failure to adjust, such as fraud or a criminal conviction that forms the basis for a charge under INA §§ 212 or 237.

*Gelee*, 2010 WL 553509, at * 7.   This statement is consistent with current BIA and circuit case law.  Specifically, in *In re Smriko*, 23 I. & N. Dec. 836, 842 (BIA 2005), the BIA found "no merit to the respondent's assertion that he is immune from removal on the basis of his convictions for crimes involving moral turpitude because his refugee status has not been terminated" under § 1157(c) (4). The agency noted that the statutes providing for removal refer simply to "[a]ny alien" or "the alien"- they do not distinguish between aliens admitted as refugees examined for admission as an immigrant within the general framework for removal proceedings. Notably, [DHS] is directed to consider the admissibility of such aliens pursuant to sections 235, 240, and 241 of the Act, 8 U.S.C. § § 1225, 1229a, and 1231 (2000) . . . Section 240, in particular, provides that an alien

1   placed in removal proceedings may be charged with 'any applicable ground of

2   inadmissibility under section 212(a) or any applicable ground of deportability under

3   section 237(a).'" *Id*. at 839.

4        The Ninth Circuit has agreed with the BIA's decision in *In re Smriko* and has held

5   that refugee status does not afford complete immunity from removal. *Kaganovich v.*

6   *Gonzales*, 470 F.3d 894, 898 (9th Cir. 2006) (upholding the BIA's interpretation in view

7   of "statutory text allowing removal of *any* alien." (emphasis in original)). Thus, contrary

8   to Petitioner's assertion, the guidance memoranda are consistent with current BIA and

9   circuit case law.

10       Petitioner, however, argues that even if the memoranda do not violate current case

11  law, Respondents have not complied with their own memoranda. As evidence of

12  noncompliance, Petitioner refers to "Petitioner Gbotoe [who] was in removal proceedings

13  for two months before the immigration judge terminated proceedings . . . ." (Doc. 30 at 5;

14  *Gbotoe v. Holder*, 2:09cv1855-PHX-NVW (MHB)) Gbotoe was then detained for five

15  months before again being placed in removal proceedings. (Doc. 30 at 5; *Gbotoe*,

16  2:09cv1855 doc. 21 at 4) Petitioner Gbotoe was placed in removal proceedings in

17  September 9, 2009, before DHS issued the guidance memoranda in November 2009 that

18  was previously discussed. Additionally, although Petitioner states that Gbotoe was "held

19  for five months pursuant to § 1159 before again being placed in removal proceedings,"

20  doc. 30 at 5, the portion of the record which Petitioner cites in support of that statement

21  indicates that Gbotoe was held pursuant to INA § 236(c), a provision that is not at issue in

22  this case. (See Doc. 30 at 5; citing *Gbotoe*, 2:09cv1855 doc. 21 at 4). Petitioner cannot

23  rely on events which occurred before the issuance of the guidance memoranda to argue

24  noncompliance.

25

26       As further evidence of the Government's noncompliance with their own

27  memoranda, Petitioner refers to *Banjeglavic v. Kane*, No. 2:09-cv-02523-NVW-ECV, in

28  which Respondents detained an unadjusted refugee on September 25, 2009, and had not

issued a NTA by December 3, 2009 - over three weeks after the November 10, 2009 memorandum was issued.  Petitioner claims that this demonstrates that nearly one month after the issuance of the guidelines, Respondents were in direct violation of their own policy.  In *Gelee*, the District Court reviewed the situation surrounding petitioner Banjeglavic and found that, on December 3, 2009, the Government reviewed Petitioner Banjeglavic's file and determined that the circumstances of his specific case warranted his release.  *Gelee*, 2010 WL 5535059, at * 8.  On December 4, 2009, petitioner Banjeglavic was served with a NTA for violating INA §§ 212(a)(6)(A)(i) and 212(a)(2)(B)(i). (*Id.*)  That same date, Banjeglavic was released from custody pursuant to an Order of Release on Recognizance. (*Id.*)   As in *Gelee*, the Court finds that petitioner Banjeglavic's case demonstrates compliance with the guidance memoranda. Although he was initially detained in excess of the time allotted, once his file was reviewed - pursuant to the new guidelines - he was promptly released.  *Gelee*, 2010 WL 5535059, at * 8.

Thus, finding that DHS's guidance memoranda is consistent with current BIA and circuit case law and that Respondents have complied with their policy, the Court determines that Respondents have met their burden and demonstrated that the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 189.  Thus, Petitioner has not met the standard for the voluntary cessation exception to mootness.  *See Alizadeh v. Kane*, No. CV-09-1942-PHX-GMS (MEA), 2010 WL 5146743, * 3 (D.Ariz., Dec. 13, 2010 ) (finding petitioner's constitutional challenge to  detention under § 1159 moot where petitioner had been released from ICE custody without any conditions or restrictions).

## III.  Conclusion

In summary, the Court concludes that Petitioner's habeas petition no longer presents a case or controversy within the meaning of Article III, § 2, of the Constitution. Petitioner has been released, not subject to any conditions.  His habeas claims are moot,

and none of the narrow exceptions to the mootness doctrine apply to his case. The Court recommends that Petitioner's Petition for Writ of Habeas Corpus be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 1, be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 7th day of February, 2011.

Lawrence O. Anderson
United States Magistrate Judge

- 14 -